UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
*Docket No.: 16-344-1(MJD)*

United States of America,

    Plaintiff,

v.

**DEFENDANT'S POSITION REGARDING SENTENCING**

Marlyn Charles Comes,

    Defendant.

## INTRODUCTION

On December 21, 2016, Marlyn Charles Comes ("Dr. Comes") was charged with one count conspiracy to commit health care fraud in violation of 18 U.S.C. §1347 and 18 U.S.C. §1349 via a one-count Information. On February 21, 2017, Dr. Comes pled guilty to the one-count information.

Dr. Comes submits this memorandum in anticipation of sentencing. At sentencing Dr. Comes will request a sentence of 16 months in prison. The basis for this request is the following: 1) Dr. Comes role within the conspiracy; 2) Dr. Comes acceptance of responsibility and cooperation with law enforcement; 3) Dr. Comes efforts to make amends for his crimes and rehabilitate himself.

## ARGUMENT

**I.)**      **Pertinent Facts Regarding the Offense**

**Personal Background Information**

Dr. Comes is a father, husband, son and a hardworking individual. Dr. Comes made the very regrettable decision of becoming involved in this criminal conspiracy but has made every

attempt possible to try and right his wrongs after being charged with this offense.

Dr. Comes was born in Watertown, South Dakota to Anna and Robert Comes. PSI at ¶ 10. Dr. Comes had many siblings and had a relatively normal upbringing while being raised on a hog farm. *Id.* Dr. Comes moved to Minnesota after he decided to attend chiropractic school where he met his wife, Pamela. *Id.* Mrs. Comes continues to support her husband till this day. Dr. Comes was employed as a chiropractor from the time he graduated from chiropractor school until charged with this offense. Dr. Comes is currently a father of three and loves all of his children very much. He is currently employed in the field of construction and has been since losing his chiropractic practice. Despite the stressors of his criminal case and the uncertainty of his future he has remained employed and continues to try and provide for his family.

He has been a chiropractor for 21 years. He loves the practice of medicine and has always treated his patients with the best care possible.

**Pertinent Facts Regarding the Conspiracy**

The following are the facts pertinent to Dr. Comes' role within offense:

Dr. Comes was a licensed chiropractor who owned and operated St. Paul Chiropractic in St. Paul, Minnesota. PSI at ¶ 2. In his role as a chiropractor, Dr. Comes treated individuals who were involved in automobile accidents. *Id.* He was paid through his clients' automobile insurance policies. *Id.* Dr. Comes obtained certain clients through "runners" and paid them referral fees for the clients provided.[1] *Id.* Referral fees paid to runners were as much as $1,200 per patient. PSI at ¶ 3. Sometimes referral fees were also paid to the clients of Dr. Comes. *Id.* These payments were characterized as "transportation" or "interpretation" fees. *Id.* The clients'

---

[1] "Runners" are third parties who acted as a conduit between patients and Dr. Comes.

no-fault insurance companies paid Dr. Comes for his services. *Id.* Following being charged Dr. Comes cooperated with the government and took full responsibility for his actions in January of 2016. PSI at ¶ 6. Dr. Comes was the first co-conspirator to come forward and cooperate.

Dr. Comes explains that he became involved in this conspiracy through the use of interpreters with some of his clients. Certain clients would request interpreters when receiving care. Conveniently, the preferred interpreter was always present with this client when they arrived. This interpreter would then request to be paid for interpretation services provided. Everything began to snowball as more and more interpreters came in with patients expecting to be paid for their services. Dr. Comes had doubts as to the legal and ethical implications of this practice but continued on regardless. In Dr. Comes own words, "I was naïve to think that what I was doing was ok." Dr. Comes always performed the proper medical services on his clients. If he ever had doubts as to the legitimacy of their medical issues he would not provide treatment. The services were never fraudulent or unnecessary. Dr. Comes has always prided himself on the care provided to patients regardless of how they came to St. Paul Chiropractic.

**II.)     The factors enumerated in Section 21 U.S.C. § 3553(a) support a downward departure from Dr. Comes' guideline sentence.**

Dr. Comes does not dispute the guideline calculation. Instead, he requests that the court sentence him to a sentence less than the recommended guidelines by applying the section 3553(a) factors.

The Sentencing Guidelines should be the starting point for the district court when sentencing a person convicted of a federal crime. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the first step should be calculating the applicable sentencing range under the Sentencing Guidelines, the sentencing judge should not presume the sentencing range to be reasonable. *Gall*, 552 U.S. at 50. The

Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 245 (2005). The sentencing judge must make an individualized assessment based on the facts of each case. *Gall*, 552 U.S. at 50. Thus, the Sentencing Guidelines are but one factor the court should consider when determining whether a sentence achieves the purposes set forth in § 3553(a)(2). *Kimbrough*, 552 U.S. at 90.

The Supreme Court has reiterated this point, noting that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," and that "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009).

In light of its "discrete institutional strength[ ], a district court's decision to vary from the advisory guidelines may attract greatest respect when the sentencing judge 'finds a particular case outside the "heartland" to which the Commission intends individual Guidelines to apply.'" *Id.* (*quoting Rita v. United States,* 551 U.S. 338, 344 (2007)). A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case." *Kimbrough,* 552 U.S. at 574 (quoting *Gall*, 552 U.S. at 597). In considering the § 3553(a) factors, "[a] district court is not required to recite each of the sentencing factors under 18 U.S.C. § 3553(a), as long as the record makes clear that they were considered." *United States v. Powills*, 537 F.3d 947, 950 (8th Cir. 2008) (*citing United States v. Hernandez*, 518 F.3d 613, 616 (8th Cir.2008)).

Under 18 U.S.C. § 3553(a) the Court shall impose a sentence "sufficient, but not greater than necessary" and shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –
   a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b. To afford adequate deterrence to criminal conduct;
   c. To protect the public from further crimes of the defendant; and
   d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) The kinds of sentences available;
(4) The kinds of sentence and the sentencing range established [by the Sentencing Commission in the Guidelines]…
(5) Any pertinent policy statement [issued by the Sentencing Commission]…
(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) The need to provide restitution to any victims of the offense.

The § 3553(a) factors support a 16-month sentence. While Dr. Comes believes that all the factors are in favor of a sentence below the recommended guideline range, this request is specifically supported by: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need to impose the minimal sentence necessary to achieve the stated goals of paragraph (2).

**Nature and Circumstances of the Offense**

    **a. Dr. Comes' Role within the Offense**

One factor the Court should examine is Dr. Comes' role within the offense. Dr. Comes was one doctor within this vast conspiracy. While his actions directly contributed to the conspiracy, he ultimately was not a ringleader or an organizer. He did not actively seek out runners. Runners came to him and Dr. Comes opportunistically took advantage of their illegal services. What started as a few clients obtained through interpreters ultimately exploded into many clients. Dr. Comes lack of judgment and decision-making during this time was his greatest downfall. Further, although the clients were obtained illegally, Dr. Comes always provided proper medical care. If Dr. Comes ever believed that something about a potential client seemed questionable with regards to the treatment requested, he would send them away.

5

### b. Dr. Comes' Cooperation

Dr. Comes has cooperated fully and completely with law enforcement following the charges in this case. His cooperation has been of great benefit to the US Attorney's Office in their efforts to prosecute other individuals within this conspiracy.

A federal search warrant was executed in this case on December 11, 2015. PSI at ¶ 6. Dr. Comes decided to cooperate with law enforcement a month later in January, 2016. *Id.* In fact, Dr. Comes was the first co-conspirator to cooperate with the government. In Speaking with law enforcement, Dr. Comes was able to greatly help the prosecution of one Sahal Warsame. Mr. Warsame was a runner who provided clients to Dr. Comes. Dr. Comes provided information regarding their dealings to the government. Ultimately, the information provided proved to be enough to convince Mr. Warsame to enter a plea of guilty and avoid trial. While other similarly situated chiropractors have avoided responsibility and taken their cases to trial, Dr. Comes has been compliant from the beginning.

### History and Characteristics of the Defendant

### a. Personal Background

Dr. Comes is a hard-working individual who has no serious criminal history. He is a family man who loves his wife and children very much. He is also a passionate caregiver who has always prided himself on the excellent medical services he has provided to clients. Prior to these charges, Dr. Comes never had a complaint made against him to the chiropractic board. He has been a chiropractor for 21 years and consistently cared for his patients with the utmost care.

Dr. Comes loves his children, Sidney (age 19), Jake (age 15), and Avery (age 11). Dr. Comes has served as Jake's basketball coach and been a faithful attendee of gymnastic meets and volleyball games. He has been a friend a provider to all his children. His greatest concern is not

what the punishment will do to himself but more what it will do to his children.

Dr. Comes and his family did not live an extravagant lifestyle. Normally, one would expect that a financial crime such as the one Dr. Comes committed would have been performed for the sole purpose of greed. While Dr. Comes certainly made a financial profit from his crimes, it was not a profit so outlandish that it provided himself and his family with a lavish, over the top, lifestyle. Instead, Dr. Comes used the money to save for his children's college tuition, put away from retirement and overall provide a normal existence for his wife and his children. In short, Dr. Comes is not a man of expensive taste who committed this crime to fuel a certain type of lifestyle. He is a family man who only ever wanted to provide for them.

### b. Familial Support

Dr. Comes is surrounded by supportive family members who have been by his side throughout this entire process and will continue to be for the rest of his life. Their dedication to him ensures that he will always have a strong support network. These family members have submitted letters of support on his behalf.[2] Despite the grave mistakes that he has made which have led him to face incarceration, his family has not wavered in their support. While it will be difficult for them to carry on if Dr. Comes is incarcerated, they will always stand by him and support him once he is returned to the community.

### c. Current Employment

After being charged, Dr. Comes continued to be employed and provided for his family. He continues to work in the field of construction for MPC Remodeling LLC and Hoyt Construction. PSI at ¶ 11. Even in the face of incarceration, Dr. Comes has managed to provide for his family and use his skills in a positive way within the world. This is evidence that he will do whatever it

---

[2] These letters of support will be provided to the Court prior to sentencing.

takes to support his family and be a productive member of society. His work ethic makes him an individual who should be allowed back in the community as soon as possible.

**Need to impose the minimal sentence necessary to achieve stated goals of paragraph (2).**

The recommended guideline sentence in no way imposes the minimal sentence necessary for Dr. Comes.

First, a 16-month sentence properly reflects the seriousness of the offense and provides just punishment. Dr. Comes does not dispute the fact that he committed this offense and takes full responsibility. He has cooperated with the Government and has provided them with any and all information he has about this offense and the overall conspiracy. He accepted responsibility very early in this process. Dr. Comes even went the very impressive route of voluntarily returning every insurance payment he received from December 2015 on. These insurance payments were all legitimate and not obtained through the use of runners (thus Dr. Comes did not have any legal duty to return these payments). These returns amounted to tens of thousands of dollars and was his only source of income at the time. Dr. Comes ultimately made these returns to make his intentions clear: that he would do whatever it took to make this matter right again. Given his acceptance of responsibility and cooperation with the government, a 16-month sentence properly reflects the seriousness of the offense and provides proper punishment.

Second, a 16-month sentence would serve to deter criminality and would protect the public from any future crimes. Although the issue of deterrence being served through incarceration is certainly up for debate, Dr. Comes is not asking for the Court to sentence him to no in-custody time because of this. Instead, Dr. Comes is asking for a 16-month sentence. A 16-month sentence would allow Dr. Comes to provide for his family in the future and rehabilitate his life when he is released. Dr. Comes will put his work ethic to good use as soon as he is back within the community

and resume his role as provider to his family. As one can see through the letters of support submitted to the court, Dr. Comes' family will desperately miss him both on an emotional level and a financial level. Further, the financial, professional and personal hardship which has already been dealt to Dr. Comes is more than enough to deter him from committing this crime again. Allowing Dr. Comes to provide a stable life for himself and his family is crucial to deterring future criminality. 16 months in prison for a person such as Dr. Comes would surely work to deter any future criminal behavior.

Based on the § 3553(a) factors, Dr. Comes requests to be sentenced to no more than 16 months.

## CONCLUSION

Dr. Comes respectfully requests to be sentenced to no more than 16 months based on the § 3553(a) factors. He is a family man who worked hard for his medical career, only to make extremely poor decisions with regards to the use of runners. Most importantly, Dr. Comes has not shied away from responsibility and has always shown a willingness to cooperate with the government throughout the entire process. Dr. Comes he is a perfect candidate for sentencing outside the recommended guidelines.

Dated: January 25, 2018

s/ Joseph P. Tamburino
**CAPLAN & TAMBURINO LAW FIRM, P.A.**
Attorney ID #0014618
525 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
(612) 341-4570
jtamburino@caplanlaw.com