UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-344 (MJD)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | POSITION OF THE UNITED STATES AS TO SENTENCING |
| MARLYN CHARLES COMES, | |
| Defendant. | |

The United States of America, by and through its attorneys, Gregory G. Brooker, United States Attorney for the District of Minnesota, and John Kokkinen, Assistant U.S. Attorney, hereby submits its position as to sentencing for Marlyn Charles Comes.

## BACKGROUND

The United States agrees that the facts as set forth in the Presentence Investigation Report ("PSR") accurately summarize the relevant offense conduct and requests that the Court adopt the facts summarized in the PSR. As described in the PSR, Comes pleaded guilty to the sole count of the information, which charged him with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. The charges stem from Comes's operation of his chiropractic practice in St. Paul, Minnesota. To build and maintain a base of patients, Comes paid individuals known as "runners" as much as $1,200 for every person involved in an automobile accident whom the runners were able to successfully recruit to become patients at Comes's clinic. (PSR ¶¶ 9-10.) To ensure that his $1,200 investment was worthwhile, Comes typically withheld the kickback payment to the runners until the

1

patient had attended a pre-determined number of treatment sessions. (*Id.* ¶ 10.) The pre-determined number of treatments applied to all patients who were the result of a kickback regardless of the unique condition of the patient or his or her response to treatment. (*Id.*) Thus, the pre-determined number of treatments was designed enable Comes to submit enough bills to the patient's automobile insurance company to offset the kickback payment and cover his other overhead expenses. (*Id.*)

Comes's practice of making kickback payments to runners was contrary to various state laws and was material to insurance companies. (*See id.* ¶ 7.) This is because the practice raises concerns about the medical necessity of the treatments. It raises questions about whether patients sought treatment and attended the number of treatments they attended because they truly needed all of those treatments or because they were getting paid by the runner—something that happened frequently and something of which Comes was aware. (*Id.* ¶ 10.) It also raises concerns about whether Comes prescribed a treatment plan that was based solely on the needs of the patient rather than on his own interest in recouping the kickback payment. (*See id.* ¶ 7.) Accordingly, Comes took steps to prevent insurance companies from learning the material information about his practice of employing runners to procure patients, including by, for example, falsely characterizing the payments as having been for translation or interpretation and instructing runners to coach patients about how to respond to their insurance company if they were asked how they ended up becoming a patient of Comes's clinic. (*Id.* ¶ 10.)

Over the course of several years, Comes paid more than $370,000 to one single

runner, Sahal Warsame, for the referral of approximately 230 patients. (*Id*. 13.) Based on Comes's average billings to insurance companies, a reasonable estimate is that Comes realized approximately $633,420 from automobile insurance companies for the approximately 230 patients who had been referred to Comes by Warsame in exchange for a kickback. (*Id*.)

## SENTENCING GUIDELINES CALCULATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology, and the first step is to calculate the advisory Guidelines range. 552 U.S. 38, 49-50 (2007). As the PSR correctly observed, the base offense level for a conviction for conspiracy to commit health care fraud is six. (PSR ¶ 21.) The PSR correctly assessed a fourteen-level increase because the loss amount was more than $550,000 but not more than $1,500,000 and a two-level increase because Comes used special skill that significantly facilitated the commission of the offense. (*Id*. ¶¶ 22, 25.) Applying a three-level reduction for acceptance of responsibility, the PSR correctly calculates the total offense level of 19. (*Id*. ¶¶ 29-31.) Based on a total offense level of 19 and a criminal history category of I, the Guidelines range is 30 to 37 months' imprisonment. (*Id*. ¶ 62.) The guidelines further recommend one to three years of supervised release. (*Id*. ¶ 65.) The recommended fine range is $6,000 to $60,000. (*Id*. ¶ 71.) The Mandatory Victim Restitution Act applies and the total restitution amount that to date has been claimed by a victim is $310,722.24. (*Id*. ¶ 73.)

## **SECTION 3553(a) SENTENCING FACTORS**

After calculating a defendant's Sentencing Guidelines range and hearing from the parties, the Court must consider applicable sentencing factors under 18 U.S.C. § 3553(a) to determine an appropriate sentence. *Gall*, 552 U.S. at 49-50. Section 3553(a) requires the Court to analyze a number of factors, including the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Health care fraud is a serious problem in the United States. Although the offense here appears not to have affected the Medicare and Medicaid programs, estimates of the harm caused by fraud to those programs is helpful in appreciating the impact that fraud has on private plans, such as the automobile insurance policies that were affected by this offense. The Office of Management and Budget estimated that for fiscal year 2010, more than $70 billion was lost by Medicare and Medicaid to improper payments, much of which was caused by fraud schemes. *See* U.S. Government Accountability Office, Highlights, Medicare and Medicaid Fraud, Waste, and Abuse (Mar. 9, 2011), available at http://www.gao.gov/assets/130/125646.pdf. It is estimated that the United States spends more than $2 trillion on health care each year and that tens of billions of those dollars are

attributable to fraud.  *See* The Challenge of Health Care Fraud, National Health Care Anti-fraud Association, available at https://www.nhcaa.org/resources/health-care-anti-fraud-resources/the-challenge-of-health-care-fraud.aspx (accessed January 25, 2018).  The harm caused by Comes's offense is not hypothetical.  As one of the victim insurance companies alluded to in its victim impact statement, Minnesota drivers end up paying more for their automobile insurance policies as a result of fraud schemes like the one Comes employed.

## **CONCLUSION**

The United States respectfully requests that the Court first take the advisory guidelines into account as the starting point of its analysis, then render its final determination in light of all of the factors set forth in 18 U.S.C. § 3553(a) relevant here, including all filings in this case.

Dated: January 25, 2018                                      Respectfully submitted,

GREGORY G. BROOKER
United States Attorney

*/s/ John Kokkinen*

BY: JOHN KOKKINEN
Attorney ID No. 388356
Assistant U.S. Attorney